UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINO SERVELLO,

    Plaintiff,

v.                                          Case No. 8:25-cv-02257-SDM-SPF

CAE INC.,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Making a special appearance for purposes of this motion only, Defendant CAE Inc. (hereinafter "CAE Inc." or "Defendant") moves this Court to dismiss Plaintiff's Second Amended Complaint because this Court lacks jurisdiction over Defendant CAE Inc. The additional factual allegations asserted in Plaintiff's Second Amended Complaint do not rectify this deficiency. As such, Defendant respectfully requests that this Court dismiss Plaintiff's claims against CAE Inc. in their entirety as any further opportunity to amend the allegations would be futile. In support of this motion, Defendant states as follows:

**I.**     **PROCEDURAL HISTORY**

Initially, on July 18, 2025, Plaintiff filed his Complaint against CAE Inc. in the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida ("Initial Complaint"). (D.E. 1-1). In his Initial Complaint, Plaintiff's sole claim was that CAE Inc. breached his Incentive Agreement because it failed to pay him twelve

(12) months' base salary upon the termination of his employment from its corporate grandchild. (D.E. 1-1 at ¶¶ 21–24). The matter was timely removed to this Court on August 25, 2025 (D.E. 1) and, thereafter, Defendant filed its Answer, asserting, in relevant part, that this Court lacks personal jurisdiction over Defendant. (D.E. 6 at 1, 6). Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction on October 20, 2025 ("Original Motion"). (D.E. 13). This Court granted Defendant's Original Motion finding that Plaintiff sought only to "attribute to the corporate grandparent the corporate grandchild's business 'contacts' with the state of Florida" and that, on its face, Plaintiff's "bare-bones complaint" was deficient to establish personal jurisdiction over Defendant CAE Inc. (D.E. 15 at 2). Implicit in the Court's ruling is its factual determination that Plaintiff entered into the Incentive Agreement with Plaintiff's actual employer, CAE Healthcare, Inc., not its corporate grandparent, Defendant CAE Inc. (D.E. 15 at 2).

The Court twice provided Plaintiff with the opportunity to amend his Complaint, which Plaintiff subsequently did in an Amended Complaint and a Second Amended Complaint ("Second Amended Complaint"). (D.E. 15, D.E. 18, D.E. 23). Nevertheless, in the Second Amended Complaint Plaintiff maintains his legal claims solely against CAE Inc. in a blatant attempt to double-dip damages for his employment separation from multiple corporate entities.[1] Although Plaintiff

---

[1] As Plaintiff explained in his Second Amended Complaint, after CAE Inc. fully divested CAE Healthcare, Inc. on February 15, 2024, Plaintiff voluntarily entered

2

13863717v3

asserts additional facts which purportedly support his claim that CAE Inc. exercised direct control over its corporate grandchild, CAE Healthcare, Inc., Plaintiff still fails to establish that this Court has personal jurisdiction over Defendant CAE Inc.

## II. CAE INC.'S BUSINESS AND RELATIONSHIP WITH ITS CORPORATE GRANDCHILD, CAE HEALTHCARE, INC.

As previously explained, Defendant CAE Inc. is a Canadian company which primarily delivers cutting-edge training, simulation, and critical operations solutions to prepare aviation professionals and defense forces. As explained in detail in its Original Motion, CAE Inc. does not conduct business in Florida and never employed Plaintiff. (*See* D.E. 13-1 at ¶¶ 3–4). Rather, CAE Inc. was simply CAE Healthcare, Inc.'s corporate grandparent until February 15, 2024, when CAE Inc. sold CAE Healthcare, Inc.'s parent company to an unrelated entity, Madison Industries. (*See* D.E. 13-1 at ¶¶ 8–9). Plaintiff's Second Amended Complaint does not dispute these facts. (D.E. 23 at ¶¶ 5, 9, 53–54).

---

into a Confidential Separation Agreement and General Release ("Separation Agreement") with CAE Healthcare, Inc.'s successor entity, Elevate Healthcare, Inc. ("Elevate") on August 9, 2024. (D.E. 13-1 at ¶¶ 8–9; D.E. 23 at ¶ 56). Regardless of Plaintiff's claim that the Separation Agreement explicitly preserves his right to recover severance benefits from CAE Inc., Defendant CAE Inc. was not a party and is not privy to the precise terms of the Separation Agreement. (D.E. 23 at ¶ 57). Presumably, Plaintiff received *some* form of compensation from Elevate in exchange for agreeing to prematurely end his employment effective December 31, 2024 and releasing any legal claims he may have had against Elevate, including any contractual obligations Elevate owed per the Incentive Agreement. (D.E. 23 at ¶¶ 55–58).

## III. THIS COURT MUST CONSIDER THE FACTUAL SUFFICIENCY OF PLAINTIFF'S ALLEGATIONS WHEN ASSESSING PERSONAL JURISDICTION.

Any plaintiff seeking to establish personal jurisdiction over a non-resident defendant bears the initial burden of alleging sufficient facts in his complaint to assert a prima facie case for jurisdiction. *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1242 (S.D. Fla. 2017). Thereafter, a defendant can challenge personal jurisdiction in the form of a Motion to Dismiss, and if it submits evidence in support of its position, the burden shifts back to the plaintiff to provide evidence supporting jurisdiction. *Id.* Defendant can challenge personal jurisdiction in one of two ways, either by attacking the sufficiency of the complaint allegations or the sufficiency of the *actual facts* that establish personal jurisdiction. *Williams v. Communications, Inc. v. Landa Mobile Systems, LLC*, No. 4:19-cv-107, 2019 WL 13212671, at *1 (N.D. Fla. June 2, 2019). In considering a facial attack, the complaint's factual allegations must be accepted as true, but on a factual attack, the court may consider evidence and resolve factual disputes. *Id.* In either case, it is ultimately the Plaintiff's burden to substantiate the jurisdictional allegations with competent proof. *McCullough*, 268 F. Supp. 3d at 1242. Here, Defendant contends that Plaintiff's jurisdictional claims are both facially deficient and unsupported by the relevant facts.

4

## IV. PLAINTIFF CANNOT ESTABLISH THIS COURT HAS PERSONAL JURISDICTION OVER CAE INC. AS IT PERTAINS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM.

Plaintiff claims this Court should exercise personal jurisdiction over CAE Inc. because its subsidiaries failed to observe corporate formalities and they should, therefore, be treated as a single corporate entity. Although recited in a variety of different ways, Plaintiff asserts only the following four factual allegations in support of those claims: (1) CAE Inc. was a party to Plaintiff's Employment Agreement and Incentive Agreement; (2) CAE Inc. and CAE Healthcare, Inc. shared common officers; (3) CAE Inc.'s employees communicated with him and other CAE Healthcare, Inc. employees about the Incentive Agreement; and (4) the entities utilized "CAE" corporate branding.[2] (D.E. 23 at ¶¶ 14–15, 73–74). As explained below, this Court has already correctly determined that Plaintiff's Incentive Agreement was with CAE Inc.'s corporate grandchild. As such, even assuming the additional factual allegations are true, they fail to establish that this Court should exercise jurisdiction over CAE Inc.

---

[2] Plaintiff also makes several assertions that are unsupported by any specific facts, including that there was a commingling of business functions; CAE Inc. generally failed to observe corporate formalities; CAE Inc. used its subsidiaries to avoid contractual obligations; CAE Inc. exercised substantial control over CAE Healthcare, Inc.'s Florida operations; and CAE Inc. derived economic benefit from Florida. (D.E. 23 at ¶¶ 15, 74). Because they are unsupported by any additional facts, Defendant does not address these general allegations herein. Plaintiff also asserts, without any legal support, that this Court should exercise jurisdiction over CAE Inc. in the "interests of justice." (D.E. 23 at ¶ 15(h)). This assertion, of course, ignores entirely that dismissal of Plaintiff's claims in this forum does not preclude Plaintiff from seeking to recover alleged damages in a proper jurisdiction.

### A.     Florida Does Not Have General Jurisdiction Over CAE, Inc.

As articulated in Florida's long-arm statute, a plaintiff can establish personal jurisdiction in only two ways, through either specific or general jurisdiction. As the Supreme Court explained in *Daimler AG v. Bauman*, a corporation generally has two paradigm bases where it is subject to ***general*** jurisdiction – its place of incorporation and its principle place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporate defendant is subject to general personal jurisdiction elsewhere in only exceptional cases and where the corporation's activities are "so substantial and of such nature as to render the corporation at home" in that forum. *Id.* In his Second Amended Complaint, Plaintiff asserts that because Defendant CAE Inc. failed to follow corporate formalities it should be treated as a single entity with its corporate grandchild for purposes of this litigation. (D.E. 23 at ¶¶ 14–15). However, Plaintiff fails to submit any factual or legal support for its far-reaching claim.

It is a well-established principle that a parent corporation is a separate and distinct legal entity from its wholly-owned subsidiaries and is not liable for the acts thereof. *Mendez v. JFK Medical Center Limited Partnership*, No. 17-80866, 2018 WL 5045210, at *3 (S.D. Fla. Sept. 4, 2018). As such, a parent-subsidiary relationship alone is insufficient to confer personal jurisdiction over a foreign parent corporation. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:121-cv-755, 2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012). Courts can only exercise personal jurisdiction over a corporate parent where it "exerts such extensive

6

operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs." *Id.* (internal citations omitted). Even then, a plaintiff must demonstrate that the corporate parent exercised a "high and very significant" amount of day-to-day ***operational*** control over its subsidiary. *Id.* Specifically, overlapping directors and officers; approval of policy decisions; having a unified or global strategy and goals; cross-selling promotional materials; and performing services for related corporate entities are insufficient to establish the requisite degree of operational control necessary to confer personal jurisdiction over a corporate parent. *Id.* at 4.

      Here, Plaintiff's assertions that CAE Inc. and CAE Healthcare, Inc. should be treated as a single entity because they share common officers and utilize corporate branding fall short of showing that CAE Inc. exercised day-to-day operational control over CAE Healthcare, Inc. Specifically, Plaintiff's argument that CAE Inc. and its corporate grandchild CAE Healthcare, Inc. are intertwined entirely ignores the undisputed fact that on February 15, 2024, CAE Inc. sold all issued and outstanding shares of CAE Healthcare, Inc.'s parent corporation, CAE Healthcare Canada Inc., to an unrelated entity, Madison Industries. (D.E. 13-1 at ¶ 8–9). That fact alone reflects that the day-to-day operations of CAE Healthcare Canada Inc. and its wholly-owned subsidiary CAE Healthcare, Inc. were sufficiently independent that they could be sold, divested and, thereafter, operate separate and apart from CAE Inc. As such, even considering Plaintiff's additional factual allegations, Plaintiff cannot establish that CAE Inc. exercised sufficient

control over CAE Healthcare, Inc.'s day-to-day operations to establish that Florida has general personal jurisdiction over CAE Inc.

      **B.**    **Plaintiff Also Fails to Establish That This Court Has Specific Jurisdiction Over Plaintiff's Breach of Contract Claim Because Plaintiff's Employment and Incentive Agreements Were With CAE Healthcare, Inc., Not CAE Inc.**

Alternatively, to determine whether it has *specific* jurisdiction over a nonresident defendant, a court must engage in a two-part analysis. First, jurisdiction must exist under Florida's long-arm statute, and second, the court's exercise of specific jurisdiction pursuant to the long-arm statute must comport with the Fourteenth Amendment's due process requirements, which requires a showing of sufficient, minimum contacts with the forum state. Here, the Court must strictly construe the single provision of Florida's long-arm statute applicable to Plaintiff's claim for specific personal jurisdiction: "breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." *See* Fla. Stat. § 48.193(1)(a)(7); *see Gulf Atlantic Transp. Co. v. Offshore Tugs Inc.*, 740 F. Supp. 823, 827 (M.D. Fla. 1999) ("Florida's long arm statutes must be strictly construed"). As explained below, Plaintiff's jurisdictional arguments fail on this basis alone.

      **1.**    **Plaintiff's Employment Contracts with CAE Healthcare, Inc. Do Not Establish Specific Personal Jurisdiction over CAE Inc.**

As referenced in Plaintiff's Second Amended Complaint, there are three contracts relevant to Plaintiff's employment with CAE Healthcare, Inc. including:

8

1. July 25, 2022 Employment Agreement *("Employment Agreement")* signed by Plaintiff and Sonya Branco on behalf of "CAE Healthcare"[3] (D.E. 23 ¶ 16–20; D.E. 23-1 at 11);

2. April 18, 2023 Incentive Agreement *("Incentive Agreement")* sent by "Jeff Evans President, CAE Healthcare"[4] and signed by Plaintiff (D.E. 23 ¶¶ 29–37; D.E. 23-2 at 2); and

3. August 9, 2024 Confidential Separation Agreement and General Release *("Separation Agreement")* between Plaintiff and Elevate (D.E. 23 ¶¶ 54–59).

---

[3] In addition to being CAE Inc.'s Chief Financial Officer, Sonya Branco was also a Director for CAE Healthcare, Inc. In signing Plaintiff's Employment Agreement she was simply "changing hats" to act on behalf of CAE Healthcare, Inc., not signing the Employment Agreement on CAE Inc.'s behalf. *See Yellow Pages Photos, Inc. v. Ziplocal LP*, No. 8:12-cv-755, 2012 WL 5830590, at *5 (M.D. Fla. No. 16, 2012 ("[o]ne of the basic tenets of corporate law is that shared directors and officers of parents and subsidiaries may hold the same position in both and 'change hats' to represent the two corporations separately."); *SX Holdings, LLC v. iContainers USA, Inc.*, No. 2025 WL 901245, at * (S.D. Fla. Mar. 25, 2025) ("[i]n addition, executives 'of a parent corporation often directly participate in the management of the subsidiary… [and] [t]he mere intermingling of officers and directors does not imply that one corporation acts as a puppet of the other.'") (internal citations omitted).

[4] As explained in Defendant's Original Motion, Jeff Evans ("Evans") was the President of CAE Healthcare, Inc. and CAE Healthcare Canada Inc. (D.E. 13 at 6; D.E. 13-1 at ¶¶ 6–7). Evans was never employed by CAE Inc. and he had no authority, apparent or otherwise, to act on behalf of the parent corporation CAE Inc. *See MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1354–55 (S.D. Fla. 2000) (explaining apparent authority exists only where the principal creates the appearance of an agency relationship, not from the purported agent nor from the subjective understanding of the person dealing with the purported agent).

9

From the face of the documents, Plaintiff's Employment Agreement and Incentive Agreement were between Plaintiff and CAE Healthcare, Inc., and Plaintiff's Separation Agreement was made with CAE Healthcare, Inc.'s corporate successor, Elevate. Notably, implicit in this Court's Order granting Defendant's Original Motion, it has already rejected Plaintiff's assertion that the plain language of the Incentive Agreement subjects CAE Inc. to jurisdiction in Florida. Plaintiff's renewed representations that his Employment Agreement and Incentive Agreement were nevertheless with CAE Inc. are without merit. Both the Employment Agreement and Incentive Agreement were entered into by individuals authorized to and acting on behalf of "CAE Healthcare." The fact that Plaintiff received, delivered, and communicated with CAE Inc. employees about the Incentive Agreement does not magically rewrite CAE Inc. to be the contracting party or render CAE Inc. legally obligated for CAE Healthcare, Inc.'s responsibilities under the Incentive Agreement.[5]

    **2.**    **Florida Cannot Exercise Personal Jurisdiction Over an Entity Based Solely on Communications with Florida Residents.**

Any argument that this Court has specific jurisdiction over CAE Inc. based solely on its employees' communications with Plaintiff or others about the Incentive Agreement is also unpersuasive. Specifically, Florida's long-arm statute

---

[5] Frankly, this assertion is preposterous. If that were legally the case, then every contract exchanged by attorneys on behalf of their clients would be interpreted to be legal contracts between the law firms, rather than the businesses they represent.

10

does not confer jurisdiction over all persons who merely communicate with Florida residents about contracts. Rather, personal jurisdiction exists over persons "breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. §48.193(1)(a)(7). Based on the statutory language alone, jurisdiction must be based upon the actual breach of the contract. Anything less than a breach, including communications with a Florida resident about a contract are legally insufficient to confer specific jurisdiction. Even assuming Florida's long-arm statute reached so broadly, exercise of personal jurisdiction over a foreign corporation simply because its employees communicated with a Florida resident would fail to comport with the Fourteenth Amendment's due process requirements. *See Gulf Atlantic Transp. Co. v. Offshore Tugs Inc.,* 740 F. Supp. 823, 828 (M.D. Fla. 1999) (finding Florida lacked personal jurisdiction over Louisiana company who contracted with Florida plaintiff where plaintiff's only contact with Florida was phone calls, telexes, and radio calls through which the parties entered into a contractual agreement).

### 3. CAE Inc. Was Not Related to CAE Healthcare, Inc. at The Time the Incentive Agreement Was Allegedly Breached.

Likewise, it is undisputed that after CAE Inc.'s sale of CAE Healthcare Canada Inc., Plaintiff remained employed with CAE Healthcare, Inc. (and its corporate successor, Elevate) for another ten (10) months, until December 31, 2024, when he voluntarily agreed to terminate his employment with Elevate pursuant to the terms of the Separation Agreement and asserts CAE Inc breached

11

the Incentive Agreement. (D.E. 23 at ¶¶ 55, 59). Plaintiff does not (and cannot) assert that there were any interrelated operations between CAE Inc. and CAE Healthcare, Inc. (including its corporate successor, Elevate) at the time of the alleged breach. Rather, according to Plaintiff, his Separation Agreement purports to preserve his right to recover severance benefits from CAE Inc. and, as such, recognizes that, at the time of the alleged breach, CAE Inc. was legally distinct and separate from CAE Healthcare, Inc. and its corporate successor, Elevate. Plaintiff's reliance on communications with CAE Inc. nearly a year earlier do not establish that there were any interrelated operations at the time of the alleged breach, let alone that CAE Inc. was a single entity with CAE Healthcare, Inc. at that time.

      **4.**    **CAE Inc.'s Post-Divestiture Communications Do Not Establish Personal Jurisdiction.**

Finally, Plaintiff reliance on any post-separation communications with CAE Inc. regarding alleged severance payments due to Plaintiff or other former CAE Healthcare, Inc. employees is unavailing. Plaintiff specifically cites to CAE Inc's communications with other former employees of CAE Healthcare, Inc. which culminated in the Tri-Party agreements referenced in Plaintiff's Second Amended Complaint. (D.E. 23 at ¶¶ 44–50). However, it is well established that settlement negotiations and agreements are privileged and cannot be used as evidence of any legal liability against CAE Inc. under either U.S. or Canadian law. *See e.g.*, Fed. R. Evid. 408; *Union Carbide Canada Inc. v. Bombardier Inc.* (2014 SCC 35); *Procureure générale du Québec c. Groupe Hexagone*, 2018 QCCA 2129 at ¶ 94).

12

As such, this Court should not consider the Tri-Party agreements or similar communications in assessing whether it has personal jurisdiction over CAE Inc.

V. **CONCLUSION**

Therefore, Defendant respectfully requests this Court enter an Order granting Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and dismiss this case accordingly without providing Plaintiff any additional opportunity to amend his complaint as Plaintiff has already been provided sufficient opportunity to amend his allegations and any further amendments would be futile.

Respectfully submitted, this 14th day of January 2025.

/s/ Nicole Bermel
David P. Steffen, FBN No. 0154717
dsteffen@constangy.com
Nicole H. Bermel, FBN No. 116158
nbermel@constangy.com
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
100 North Tampa Street, Suite 2650
Tampa, Florida  33602-5832
(813) 223-7166 / Fax: (813) 223-2515
Service Email: tampa@constangy.com
*Attorneys for Defendant*

13

13863717v3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of January 2025, I electronically filed the foregoing using the CM/ECF System, which will send a notice of electronic filing, along with a true and correct copy of the foregoing, via e-mail to:

Ashwin R. Trehan, Esq.
CANTRELL SCHUETTE, P.A.
401 E. Jackson Street, Ste. 2340
Tampa, FL 33602
Telephone:  (813) 705-6275
atrehan@lawcantrell.com
paralegal@lawcantrell.com
*Attorney for Plaintiff*

                                          /s/Nicole Bermel
                                          Attorney for Defendant

13863717v3