UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINO SERVELLO,

    Plaintiff,

v.

                                         CASE NO. 8:25-cv-02257-SDM-SPF

CAE INC.,

    Defendant.

_____/

**ORDER**

Alleging breach of contract, Gino Servello sues (Doc. 23) CAE Inc. (CAE), which moves (Doc. 26) to dismiss for lack of personal jurisdiction. Servello responds (Doc. 31) in opposition and CAE replies. (Doc. 34).

In December 2021, Servello began working as "Head of Financial Planning & Analysis" for CAE Healthcare Inc. (CAE Healthcare) a Delaware corporation based in Florida and formerly a wholly owned subsidiary of Canada-based CAE Healthcare Canada Inc. (CAE Healthcare Canada), which in turn was a wholly owned subsidiary of Canada-based CAE. (Doc. 23 at ¶¶ 9–10, 15–16). On July 25, 2022, Servello was promoted to "Director of Finance for the Healthcare Division." (Doc. 23 at ¶ 7). Although the "Employment Agreement" bears CAE Healthcare's letterhead and Florida address, the agreement specifies that "[t]his offer is extended on behalf of CAE Inc." and is signed by

Sonya Branco, CAE's "Executive Vice President and Chief Financial Officer." (Doc. 23 at ¶ 13; Doc. 23-1 at 1 and 11).

In 2023, CAE prepared to sell CAE Healthcare to a third party. Recognizing the need to retain key personnel, including Servello, CAE offered certain employees of CAE Healthcare a retention and performance bonus.[1] (Doc. 23 at ¶¶ 23–24). On April 20, 2023, Carter Copeland, an employee of CAE, sent Servello a password-protected email attaching a retention contract and stating:

> Gino, as discussed, please see revised attached retention as associated with your disproportionate contribution to this project. As such please do me a favor and keep to yourself. Please return[] the signed doc to Maya Hourani.[2] Thanks buddy and see you next week.

(Doc. 23 at ¶¶ 26–27).

The retention contract, which bears CAE's letterhead and the name, but not the signature, of "Jeff Evans, President, CAE Healthcare," states:

> As you know, CAE has expressed the intention to seek investment in some or all of the Healthcare business. As a key individual, whose continued employment is critical for business continuity and the success of the transaction, we are pleased to offer you the following bonuses as per the terms and conditions below.

---

[1] Other CAE Healthcare executives entered into substantially identical agreements, and in 2024 CAE executed a "Confidential Payment Agreement and General Release" providing payments calculated under the same formula as Servello's agreement. (Doc. 23 at ¶¶ 41–52).

[2] Maya Hourani is CAE's Vice-President of Global Rewards and HR Services. (Doc. 23 at ¶ 28).

- 2 -

The retention contract provides that, in addition to his salary under the 2022 employment contract, Servello would receive a $160,000 "Retention Bonus," comprising an $80,000 payment "after the closing of the Transaction Date" and an additional $80,000 payment "six months after the Transaction Date." The retention contract states, "[s]hould you be terminated without cause in the first 18 months of employment with the acquiring company, you will receive a severance pay of 12 months of your base salary and target bonus in effect at the time of termination." (Doc. 23-2). Servello signed the retention contract on May 5, 2023, and returned it to Hourani. (Doc. 23 at ¶ 37; Doc. 23-2).

On February 15, 2024, CAE sold all shares of CAE Healthcare Canada, including all ownership interest in CAE Healthcare, to a third party, which thereafter rebranded CAE Healthcare as Elevate Healthcare, Inc (Elevate). (Doc. 23 at ¶ 53). Servello initially remained employed by Elevate in the same capacity. (Doc. 23 at ¶ 54).

On August 9, 2024, Servello and Elevate executed a separation contract providing that Servello's employment would end on December 31, 2024, and that "nothing . . . shall prohibit [Servello] from . . . receiving severance or retention benefits from CAE, Inc. as per any preexisting agreement(s) between [Servello] and CAE, Inc." (Emphasis in original) (Doc. 23 at ¶¶ 56–57). Also, the separation contract states, "[a]fter the Separation Date, [Elevate] will notify CAE Inc. of Employee's involuntary termination." (Doc. 23 at ¶ 56). In accord with the separation agreement, Servello was terminated on December

- 3 -

31, 2024, less than eleven months after the sale of CAE Healthcare. (Doc. 23 at ¶ 59) Also in accord with the separation agreement, Elevate notified CAE of Servello's termination. (Doc. 23 at ¶ 61).

In January 2025, Servello reminded both Elevate and CAE of the severance payment due under the retention agreement.[3] (Doc. 23 at ¶ 62). Angela Woodland, an Elevate employee, responded that the severance payment process was "at a standstill" because CAE needed more information from Elevate and that CAE was "taking the stance they are only 'topping up the value' of the severance." (Doc. 23 at ¶¶ 63–64). Walid Touma, "Senior Director [of] Corporate Finance of CAE" responded and "requested information from [Servello] to 'expedite matters' relating to the severance payment." (Doc. 23 at ¶ 65).

Because of CAE's continued refusal to pay the severance despite repeated requests, Servello sues CAE for breach of contract. (Doc. 23 at ¶ 69). Notwithstanding the arguments in CAE's motion to dismiss and CAE's reply to Servello's response in opposition, Servello plausibly alleges that (1) Branco, CAE's CFO, entered into an employment contract with Servello; (2) Copeland, a CAE employee, delivered a retention agreement bearing CAE's letterhead and instructed Servello to return the executed agreement to

---

[3] At the time of his termination, Servello's annual base salary was $247,680 with a target bonus of $61,920, totaling $309,600 due under the retention contract. (Doc. 23 at ¶ 68; Doc. 23-2).

- 4 -

Hourani, another CAE employee; (3) CAE exercised substantial control over CAE Healthcare's Florida operations through agents and employees conducting business on CAE's behalf in Florida; (4) CAE derived economic benefit from those Florida operations; and (5) CAE's failure to pay Servello, a Florida resident, caused injury in Florida.

Accepting as true Servello's allegations and supporting exhibits and construing all reasonable inferences in Servello's favor, the second amended complaint satisfies Florida's long-arm statute, including §§ 48.193(1)(a)(1) and (1)(a)(7), Florida Statutes, because Servello plausibly alleges that CAE operated and conducted business in Florida and breached a contract contemplating performance in Florida. The exercise of jurisdiction over CAE comports with due process because CAE purposefully directed business activity to Florida, the breach-of-contract claim arises from that activity, and litigation in Florida is reasonably foreseeable.

For these reasons, and for those stated in the second amended complaint and the response to the motion to dismiss, the motion to dismiss is **DENIED**.

**ORDERED** in Tampa, Florida, on March 5, 2026.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 5 -